**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Delbert Harrison, | ) | **CASE NO. 1: 12 CV 625** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| The Progressive Corporation, *et al.*, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

Plaintiff Delbert Harrison has filed a "First Amended Class and Collective Action Complaint" alleging illegal discrimination on the basis of race and age against The Progressive Corporation, Progressive Casualty Insurance Co., Progressive Direct Insurance Co., Drive Insurance Holdings, Inc., Progressive Commercial Holdings, Inc., Progressive Direct Holdings, Inc., and "Unknown Companies 1-99" (collectively, "Progressive" or "defendants").  Pending before the Court is Defendants' Motion to Dismiss the First Amended Complaint, or, alternatively, to Strike the Class and Collective Action Allegations (Doc. 31).  For the reasons stated below, the Court grants defendants' motion to dismiss plaintiff's class and collective action claims and plaintiff's claims alleging "disparate impact." The Court  otherwise denies defendants' motion.

1

**Facts**

Plaintiff's First Amended Complaint (First Amended Complaint or Complaint) alleges the following facts.  Plaintiff was employed by "Progressive" and worked "within Progressive's Human Resources function" until approximately 2011.  (FAC, ¶¶ 75, 76.)[1]  At all relevant times, plaintiff was qualified for the "positions which he held or for which he applied."  (*Id.*, ¶ 77.)[2]

Progressive uses a "Value Assessment Tool" (VAT) rating "to determine employee compensation, promotions, demotions, transfers, assignments, terminations and re-hires." (*Id.*, ¶ 7.)  VAT scores evaluate employees in three categories:  (1) past performance history and trends; (2) skills and competencies used to generate results; and (3) expected future contributions."  (*Id.*, ¶ 20.)   "Within the last five years, Progressive's human resource department and others undertook to study whether the VAT rating unfairly discriminated against Progressive employees."  (*Id.*, ¶ 8.)  "After carefully reviewing the data relating to its use of VAT scores, Progressive's human resources department concluded that the VAT scores were disproportionately lower for non-Caucasians and for older employees."  (*Id.*, ¶ 10.) Progressive's human resources department determined that the VAT assessment discriminates against "minorities" and "older workers."  (*Id.*, ¶¶ 11, 12.)  The "human resources department" objected to the use of the VAT rating and requested that Progressive discontinue use of the VAT score because it discriminates against minorities and older workers.  (*Id.*, ¶

---

[1]      Plaintiff does not allege which specific defendant/s he worked for and refers to the defendants collectively in his First Amended Complaint as "Progressive."

[2]      The Complaint does not specifically identify these positions.

2

13, 14.)  Specifically, it was "recommended" to Progressive's CEO, Glenn Renwick, that Progressive terminate the use of the VAT because of the VAT's discriminatory treatment of, and disparate impact on, employees.  (*Id.*, ¶ 54.)  "Despite the conclusions of its human resources department, Progressive has knowingly and intentionally continued to discriminate by, among other things, continuing to use VAT assessments."  (*Id.*, ¶ 15.)  Progressive has refused to discontinue the use of the VAT.  (*Id.*, ¶ 55.)

Plaintiff alleges that "for at least ten years, Progressive has implemented certain uniform employment policies, including without limitation, evaluating employees by assigning them 'VAT' scores which Progressive knew, and intended, would discriminate against employees on the basis of race" and "age."  (*Id.*, ¶¶ 60, 61.)  In this manner, "Progressive mandated the implementation of a common mode of discriminatory evaluation" and "knowingly and intentionally mandates the use of a biased testing procedure to evaluate employees."  (*Id.*, ¶¶ 62, 63.)

Plaintiff, an African American over the age of 40, alleges that because of his race and age, he received a lower VAT score than other similarly-situated Caucasian and younger employees.  He alleges that Progressive's discriminatory use of the VAT score caused him to suffer injuries in the terms and conditions of his employment.  He alleges that he was denied compensation, promotions, tenure in his position, transfer, retention and rehire "to which he was otherwise entitled" "because of" his race and age.  (*Id.*, ¶¶ 81, 82.)

The First Amended Complaint alleges intentional discrimination and disparate impact claims under both Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act (ADEA).  Plaintiff seeks to bring Title VII disparate treatment and disparate

impact claims (the first and second causes of action alleged in the Complaint) against Progressive on behalf of himself and on behalf of a nationwide class consisting of "[a]ll persons who worked for Progressive who are not Caucasian and who were employed by Progressive since the implementation of VAT evaluations."  (*Id.*, ¶ 117.)  Plaintiff also seeks to bring his disparate treatment and disparate impact claims under the ADEA (the third and fourth causes of action) as a representative of a "Collective Action Class" consisting of himself and other similar-situated persons over the age of 40 who opt in.  (*Id.*, ¶¶ 155, 159.)  Plaintiff's first cause of action ("intentional racial discrimination in employment") alleges that in adopting and implementing corporate-wide employment policies that discriminate against African Americans and members of "other ethnic groups," Progressive has knowingly, intentionally, and unlawfully discriminated against plaintiff and the plaintiff class on the basis of race in violation of Title VII.  (*Id.*, ¶¶ 140, 141.)  Plaintiff's second cause of action ("disparate impact on the basis of race") alleges that Progressive has violated Title VII in knowingly and intentionally "adopt[ing] and implement[ing] corporate-wide employment policies, including implementation of VAT evaluations which have a discriminatory disparate and adverse impact on non-Caucasians on the basis of race."  (*Id.*, ¶ 150.)  Plaintiff's third cause of action ("intentional age discrimination") alleges that Progressive knowingly, intentionally, and unlawfully discriminated against plaintiff and the "Collective Action Class" on the basis of age with respect to the terms and conditions of employment and has a pattern and practice of paying, evaluating, promoting, transferring, retaining and rehiring younger, less-qualified employees and discriminating against older workers on the basis of age.  (*Id.*, ¶ 161.)  Plaintiff's fourth cause of action ("disparate impact on basis of age") alleges that

Progressive has "knowingly and intentionally adopted, implemented and maintained corporate-wide employment policies, including implementation of VAT evaluations which have a discriminatory disparate and adverse impact on employees over the age of forty and in comparison with substantially-younger similarly situated persons." (*Id.*, ¶ 172.)

The Complaint seeks an injunction enjoining defendants from engaging in conduct described in the complaint and for an award of past and future economic and non-economic compensatory damages, back pay, front pay, lost benefits, pain and suffering, punitive damages, liquidated damages, interest, and all costs and attorneys' fees.

Defendants contend that plaintiff's First Amended Complaint should be dismissed or, alternatively, that plaintiff's Title VII class and ADEA collective action allegations should be stricken.

### Standards of Review

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a complaint.  In order to survive a motion to dismiss, a complaint's factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.  *Ass'n of Cleveland Firefighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must contain sufficient factual material to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully." *Id*.  Thus, "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Id.*

Fed. R. Civ. P. 23 governs class actions in federal court.  In order to obtain class

certification, a claimant must meet the four prerequisites set out in Rule 23(a):  (1) the class is

so numerous that joinder of all members is impracticable; (2) there are questions of law or

fact common to the class; (3) the claims or defenses of the representative parties are typical of

the claims or defenses of the class; and (4) the representative parties will fairly and

adequately protect the interests of the class.  *Pilgrim v. Universal Health Card, LLC*, 660 F.3d

943, 945 (6th Cir. 2011).  In addition, a party seeking class certification must also show that

the class action is maintainable under one of the three provisions set out in Rule 23(b),

including that:

> (2) the party opposing the class has acted or refused to act on grounds that
> apply generally to the class, so that final injunctive relief . . . is appropriate
> respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to the class
> members predominate over any questions affecting only individual members,
> and that a class action is superior to other available methods for fairly and
> efficiently adjudicating the controversy.  The matters pertinent to these
> findings include:
>
> (A) the class members' interests in individually controlling the prosecution or
> defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already
> begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the
> claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(2), (3).

Rule 23 is more than "a mere pleading standard," and a party seeking class

certification must demonstrate sufficient facts to meet its requirements.  *Wal-Mart Stores, Inc.*

*v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Certification of a class action is proper only if the

trial court is satisfied, after a "rigorous analysis," that the prerequisites of Rule 23(a) have

been met.  *Id.*[3]

**Discussion**

Plaintiff alleges that his Title VII claims are properly brought as class claims under

Fed. R. Civ. P. 23(b)(2) and (3) "because Progressive has acted or refused to act on grounds

generally applicable to the Class, thereby making appropriate final injunctive relief or

corresponding declaratory relief with respect to the Class as a whole; and because questions

of law and fact common to the Class predominate over any questions affecting only individual

members, and a class action is superior to other available methods for the fair and efficient

adjudication of this case."  (FAC, ¶ 134.)  The First Amended Complaint alleges that:  the

members of the class are numerous (reasonably estimated and believed by plaintiff to exceed

10,000); plaintiff's claims are typical to the class members' claims; plaintiff and his counsel

---

[3]
        In light of the requirement that courts make certification determinations only after
a "rigorous analysis," plaintiff contends defendants' motion to strike class allegations is
premature in that the parties have not yet engaged in discovery.  However, the Sixth
Circuit has ruled that a motion to strike class allegations may be made by the defendant
before a motion for class certification is filed.  *Pilgrim v. Universal Health Card, LLC*,
660 F.3d 943, 945 (6th Cir. 2011).  Moreover, the Sixth Court held in *Pilgrim* that the
district court properly struck class allegations prior to discovery where discovery would
not have "alter[ed] the central defect in th[e] class claim."  The court affirmed the district
court's judgment striking class allegations and dismissing a lawsuit prior to discovery,
finding that the defect in the class action at issue involved "a largely legal determination"
that "no proffered factual development offer[ed] any hope of altering."  *Id*. at 949.

7

will fairly and adequately represent and protect the interests of the class; and no conflicts of interest exist between plaintiff and other class members. (FAC, ¶¶123, 125.)

Defendants argue the First Amended Complaint should be dismissed because, despite plaintiffs' conclusory assertions, it does not allege facts plausibly suggesting that plaintiff's alleged class action can satisfy the prerequisites of Rule 23. They argue that plaintiff has not sufficiently pleaded adequacy of representation under Rule 23(a)(4) or commonality under Rule 23(a)(2). In addition, they argue plaintiff's alleged claims cannot be certified under Rule 23(b)(2) or (3).[4] Defendants likewise contend that plaintiff has failed to plead a

---

[4]

Progressive's brief details the many problems it contends plaintiff has in obtaining certification under Fed. R. Civ. P. 23(a) and (b). The following summarizes Progressive's arguments. Plaintiff cannot demonstrate adequacy of representation because plaintiff has a number of inherent conflicts with the alleged proposed class. Specifically, plaintiff's proposed Title VII class purports to include managers (such as plaintiff) and "non-management" employees. This presents an "inherent conflict" of interest between plaintiff and the class because "managers in the proposed class would have been responsible for assigning the very VAT scores that Plaintiff claims constitute discrimination." (Br. at 7.) Further, plaintiff seeks to represent two classes, those discriminated on the basis of race and those discriminated on the basis of age. This creates an inevitable conflict because "Plaintiff will inevitably be forced to argue that the same alleged use of VAT scores discriminated against a white employee over age 40 by virtue of the fact that a younger African-American employee received a promotion or a pay increase that the white employee was denied, a claim in direct conflict with the allegations that 'all' members in the Title VII race discrimination class and 'all' members of the ADEA collective action class suffered discrimination because of the same use of VAT." (Def. Mem. at 9.) In addition, plaintiff's complaint does not explain how plaintiff "can resolve conflicts within the various non-white minority groups (*i.e.*, Hispanic, Asian, African-American, Native American, etc.) that are inevitable in a class the size of the putative class." Plaintiff is also "precluded from contending that he was discriminated against on the basis of his age in violation of the ADEA while at the same time . . . asserting that Progressive took the same action against him because of his race under Title VII." (Br. at 10.) "Commonality" under Rule 23(a) is lacking because plaintiff does not allege that Progressive administered the VAT as to employees in a uniform way. And, contrary to plaintiff's allegations, certification is not appropriate under either Rule 23(b)(2) or 23(b)(3). Certification is not appropriate under Rule 23(b)(2) because plaintiff seeks back pay, punitive damages, and compensatory damages,

plausible "collective action" under the ADEA because plaintiff's allegations in support of this claim are purely conclusory, and plaintiff has not pleaded facts supporting his alleged legal conclusion that he is "similarly-situated" to all current and former Progressive employees who are or were over forty.

In addition to arguing that plaintiff's allegations are insufficient to support plausible class and collective action claims under Title VII and the ADEA, defendants also argue that plaintiff's claims are subject to dismissal for other reasons as well.  First, they argue that plaintiff's "class" and "disparate impact" claims are barred for the threshold reason that plaintiff failed to exhaust his administrative remedies as to such claims.

Exhaustion is a threshold procedural prerequisite to the commencement of a Title VII action, whether by an individual or on behalf of a class of aggrieved individuals.  *Marquis v. Tecumseh Products Company*, 206 F.R.D. 132, 151 (E.D. Mich. 2002).

The Sixth Circuit has recognized the requirement that a plaintiff exhaust administrative remedies in Title VII cases, explaining in *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361-62 (6th Cir. 2000) that:

> [i]n designating the procedure for challenging employment discrimination under Title VII, Congress gave initial enforcement responsibility to the EEOC. Thus, an employee alleging employment discrimination in violation of the statute must first file an administrative charge with the EEOC within a certain time after the alleged wrongful act or acts.  *See* 42 U.S.C. 2000e-5(e)(1).  The charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of."  29 C.F.R. §1601.12(b).  As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge.  *See* 42 U.S.C. § 2000e-5(f)(1); *Alexander v.*

relief that cannot be certified under Rule 23(b)(2). Certification is not appropriate under Rule 23(b)(3) because individualized determinations and proof will necessarily predominate the case and a class action is not the superior method for adjudicating it.

> *Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S. Ct. 1011, 39 L.Ed.2d 147 (1974).
> This rule serves the dual purpose of giving the employer information
> concerning the conduct about which the employee complains, as well as
> affording the EEOC and the employer an opportunity to settle the dispute
> through conference, conciliation, and persuasion.  *See id.* at 44, 94 S. Ct. 1011.
> Hence, allowing a Title VII action to encompass claims outside the reach of
> the EEOC charges would deprive the charged party of notice and would
> frustrate the EEOC's investigatory and conciliatory role.

Thus, Title VII plaintiffs are barred from asserting claims that are not included, or reasonably

expected to grow out of, a plaintiff's EEOC charge.  *Id.* at 361.  Exhaustion prerequisites also

apply to class and collective claims brought under Title VII and the ADEA.  In *Parrish v.*

*Ford Motor Co.*, No. 89-6290, 1990 WL 109188, at * 7 (6th Cir. Aug. 2, 1990), the Court

stated:  "It is well-established that if a plaintiff is to maintain a . . .  class action, his EEOC

charge must at least contain an allegation of class-wide discrimination."  That is, a class

action must be supported by at least one EEOC charge that alerts the employer and the EEOC

of alleged class-wide discrimination and must provide adequate notice of the scope of the

proposed class so that the parties may engage in meaningful conciliation efforts in advance of

suit.  *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1102-05 (11th Cir. 1996).

Applying the exhaustion rule, courts have held that plaintiffs are barred from asserting

class-based discrimination claims where their EEOC charge fails to indicate illegal class-

wide, as opposed to individual, discrimination.  *See e.g., Parrish v. Ford Motor Co.*, No. 89-

6290, 1990 WL 109188, at * 7 (6th Cir. Aug. 2, 1990) (affirming denial of plaintiff's motion

to file an amended complaint alleging class claims under the ADEA, finding that plaintiff's

EEOC charge did not assert an "adequate claim of class-based discrimination,"

notwithstanding that the charge referenced Ford's "practiced policy" of imposing an age-

based window on promotions); *Marquis v. Tecumseh*, 206 F.R.D. at 155 (Title VII class

10

allegations dismissed where the EEOC charges did not allege class-wide violations of Title

VII or provide the scope of the proposed class.  The Court stated that the EEOC charges,

which were brought in the individual plaintiff's name and used the terms "I" and "me,"

"could not reasonably be expected to have led to an investigation of class-wide

discrimination."); *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124 (7th Cir. 1989) (trial

court properly dismissed class-wide allegations where plaintiffs' pre-litigation charges,

asserting that plaintiffs had been discriminated against because of their sex, referred to

individual instances of discrimination and could not reasonably be expected to have led to an

investigation of class-wide discrimination).

Defendants contend that plaintiff's class allegations should be dismissed here because

plaintiff's EEOC charge, which is brought in plaintiff's name only, complains only of race

and age discrimination against the plaintiff himself.  Plaintiff's charge did not contain

information sufficient to notify Progressive or the EEOC that plaintiff sought to allege *class*-

based race and age discrimination claims.

Plaintiff's EEOC charge, in full, states as follows:

I am an African-American male.  I was hired by Progressive Insurance in July
2007 as a Director of Human Resources.  During my employment with
Progressive Insurance, I was subject to discriminatory corporate-wide policies,
practices, and treatment, through which Progressive discriminated against me
in all terms and conditions of my employment on the basis of my age and race.
Progressive subjected me to discriminatory compensation, benefits, demotion,
title changes, and denial of promotional, transfer, and rehire opportunities for
which I was qualified, due to my age and race.  At the same time, Progressive
provided more favorable treatment to Caucasian and substantially younger
employees.  Ultimately, Progressive terminated my employment due to my age
and race in February 2011.

11

(Def. Mem., Ex. 2.)[5]

Defendants argue:

> Here, although the Amended Complaint offers the bare legal conclusion that Plaintiff's EEOC Charge put Progressive on notice that he was pursuing class and collective action claims, Plaintiff is betrayed by the plain wording of his sworn Charge.  Far from alleging class-based discrimination, Plaintiff's EEOC charge consists of a one-paragraph description of disparate treatment to which he alone allegedly was subjected, using the first person singular . . . . Plaintiff's Charge did not put Progressive (or the EEOC) on notice that he intended to pursue a class or collective action.  Quite the contrary, Plaintiff made the Charge on behalf of himself alone.  He made no reference to class-wide race or age discrimination.  He did not allege that anyone other than he was the victim of alleged race or age discrimination, much less state that he was pursuing claims on behalf of himself and others similarly situated. . . .

(Def. Mem. at 25-26.)

Plaintiff argues that he has adequately exhausted his administrative remedies as to his class-wide and collective action claims.  He contends that the reference in his charge to "discriminatory corporate-wide policies, practices, and treatment," and his statement that "Progressive provided more favorable treatment to Caucasian and substantially younger employees," "necessarily indicates that all non-caucasians and older employees suffered the same corporate wide discrimination."  (Opp. at 22.)

However, plaintiff's arguments are not persuasive, and the Court agrees with Progressive that plaintiff's class and collective action claims are barred.  The Sixth Circuit

---

[5]

The First Amended Complaint refers to plaintiff's charge, and Progressive attached a copy of the charge to its motion.  The Court may consider the charge in deciding the pending motion.  *See, e.g, Amini v, Oberlin College*, 259 F.3d 493, 502-03 (6th Cir. 2001) ("[D]ocuments that a defendant attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim . . . . [T]here is no question that the EEOC charge, the filing of which was a precondition to [plaintiff] bringing this suit, is central to his discrimination claim.")

has made clear that class action claims under Title VII and the ADEA are barred where the plaintiff did not express any intent to file class claims in his dealings with the EEOC. *McKnight v. Gates*, 282 Fed. Appx. 394, 398 (6th Cir. 2008).  As set out above, the charge of discrimination plaintiff filed with the EEOC is brought in plaintiff's name only and makes no reference whatsoever to any other Progressive employee or similarly situated individual.  The charge states only that *plaintiff* was subject to unlawful discriminatory treatment.  The charge states:  "During **my** employment with Progressive Insurance, **I was subject to discriminatory corporate-wide policies, practices, and treatment,** through which **Progressive discriminated against me** in all terms and conditions of **my employment** on the basis of **my age and race.**"  "Progressive **subjected me** to discriminatory compensation, benefits, demotion, title changes, and denial of promotional, transfer, and rehire opportunities for which **I was qualified**, **due to my age and race.**"  (emphasis added.)

Contrary to plaintiff's assertions, the language in plaintiff's charge would not reasonably have put Progressive on notice or prompted the EEOC to investigate class-wide claims of race and age discrimination as plaintiff alleges in his First Amended Complaint (asserting claims of discrimination against Progressive on behalf of a class of "all persons who worked for Progressive who are not Caucasian and who were employed by Progressive since the implementation of VAT evaluations" and on behalf of a collective action class of Progressive employees over the age 40.)  Plaintiff's argument is not persuasive that the use of the words "discriminatory corporate-wide policies, practices, and treatment" in his charge "necessarily indicates that all non-caucasians and older employees suffered the same corporate wide discrimination."  As previously stated, while plaintiff's charge asserts that

Progressive's "discriminatory corporate-wide policies, practices, and treatment" subjected HIM to unlawful race and age discrimination, plaintiff's charge makes no reference whatsoever to any other employee or person.  Furthermore, no specific discriminatory corporate-wide "policy," "practice," or "treatment" of Progressive is mentioned anywhere in plaintiff's EEOC charge.  In particular, the VAT assessment plaintiff challenges in his First Amended Complaint is not mentioned in the charge.  Although the language in plaintiff's charge indicates that plaintiff was subjected to race and age discrimination, the charge could not reasonably have been expected to put Progressive or the EEOC on notice that plaintiff contended that all non-caucasian and older employers at Progressive were subjected to the same corporate wide discrimination.

The cases on which plaintiff relies are distinguishable and do not persuasively demonstrate that plaintiff has adequately exhausted his alleged class and collective action claims.  First, the charge in the Ninth Circuit case plaintiff cites, *Paige v. State of California*, 102 F.3d 1035,1042 (9th Cir. 1996), is distinguishable in that the charge in that case alleged that the examination defendant used to determine eligibility for promotion was "biased, discriminatory, non-job related, [and] conducted without consideration of an effective affirmative action program."  The Ninth Circuit found this charge sufficient to support plaintiff's subsequent class action because the charge informed the defendant that plaintiff was concerned about defendant's overall promotional process, not simply discrimination against the plaintiff himself.  The court stated:  "Investigation of a charge that a promotional examination is biased and frustrates the goals of an overall affirmative action policy necessarily involves an examination of the promotional system and of the role, if any, that

14

race plays in that system." *Id.* Unlike in *Paige*, plaintiff's charge does not allege that the VAT, or any other specific policy of Progressive, was biased, discriminatory, non-job related, or counter to an affirmative action policy. (Indeed, plaintiff's charge does not even mention the VAT.) Unlike the charge in *Paige*, plaintiff's charge indicates that plaintiff was concerned only with discrimination against plaintiff himself.

In *EEOC v. Keco Ind. Inc.,* 748 F.2d 1097 (6th Cir. 1984) (the other case plaintiff cites to support his position that his charge is sufficient to exhaust his class and collective action claims), the court noted that the EEOC had broadened the scope of an individual charge of discrimination into an investigation into a class based claim and stated that the EEOC's investigation could have reasonably been expected to grow out of the individual complaint of discrimination. However, as Progressive points out, *Keco* is not instructive here because it involved a representative action brought by the EEOC, which is subject to different requirements than a Title VII class action brought by private litigant. Specifically, unlike a Rule 23 class action brought by individual private litigant, the "ability of the EEOC to maintain a class-wide action is not dependent on an underlying class charge." *See EEOC v. GMRI*, No. 1: 08 CV 2214, at *10, 2009 WL 2151788 (N.D. Ohio July 16, 2009). *Keco* is not persuasive to demonstrate that plaintiff's alleged class and collective action claims, which depend on an underlying charge, have been adequately exhausted.

In sum, applicable case law indicates that the charge plaintiff filed with the EEOC is insufficient to demonstrate an "adequate claim of class-based" discrimination as opposed to individual discrimination. Accordingly, the Court grants defendants' motion to dismiss plaintiff's class and collective action claims on the basis that plaintiff has failed to exhaust his

15

administrative remedies as to such claims.[6]

Progressive also argues that plaintiff has failed to exhaust his administrative remedies with respect to his alleged "disparate impact" claims under Title VII and the ADEA. Progressive's argument in support of this position is that:

> Plaintiff's lawyer-aided EEOC Charge does not allege disparate impact. Rather, Plaintiff alleges that he "was subject to" discriminatory practices "on the basis of my age and race" and "due to my age and race."  By stating that he was "subject to" discrimination "on the basis of" and "due to" his age and race, Plaintiff alleges a pure disparate treatment claim.  This precludes him from bringing a disparate impact claim.

(Def. Mem. at 25-26.)

Progressive contends that in order to now allege a disparate impact claim, the plaintiff's charge must have identified a specific neutral policy that has an unintended disparate impact on a protected group.  Plaintiff's charge does not identify such a policy. Rather, plaintiff's charge alleges that plaintiff only was subjected to intentional discriminatory conduct.  (Def. Mem. at 28.)

Plaintiff does not cite a case finding a disparate impact claim to be adequately exhausted on a similar EEOC charge, but contends in his opposition brief that his charge is sufficient to encompass "disparate impact" claims.  In particular, plaintiff disputes that in order to exhaust a disparate impact claim, a plaintiff must identify in his EEOC charge a specific neutral policy that had an unintended consequence of discriminating against a protected group.  Rather, plaintiff contends the appropriate standard for whether he has exhausted his disparate impact claims (regardless of the specific language used in his charge)

---

[6]

In light of this recommendation, it is not necessary to address whether plaintiff's claims satisfy Fed. R. Civ. P. 23.

is whether an EEOC investigation into potential liability based on disparate impact could have been "reasonably expected to grow out of the charge of discrimination" he made.  (Pltf. Opp. at 25-26.)  Plaintiff contends that his charges of "discriminatory corporate-wide policies, practices, and treatment"

> would prompt an investigation as to whether these policies, practices and treatment have a disparate impact on older employees and non-caucasian employees.  As such, this Court must find that Plaintiff has exhausted his administrative remedies for the disparate impact claim.  Short of actually using the term "disparate impact," which is not required, it is difficult to imagine what else Plaintiff could have alleged.

(Pltf. Opp. at 27.)

While the Court agrees with plaintiff that the standard for determining whether a disparate impact claims is exhausted is whether an EEOC investigation into potential liability based on disparate impact could have been "reasonably expected to grow out of" the EEOC charge and that the charge need not expressly use the term "disparate impact" (*see, e.g., Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 402 (6th Cir. 2008)), Progressive cites persuasive authority from other jurisdictions indicating that in order to meet this standard for purposes of exhausting an adverse impact claim the plaintiff must indicate in his EEOC charge that a facially neutral policy of the defendant had an unintended adverse impact on the alleged protected class.  The reasoning of the district court in *Brown v. Ameriprise Financial Services, Inc.*, 707 F. Supp.2d 971, 976-77 (D. Minn. 2010), is on point and persuasive.  In *Brown,* the court analyzed whether a disparate impact claim could be said to have grown out of a plaintiff's charge of discrimination, which asserted that African American employees were forced to resign, threatened with termination, paid less than white employees, and placed in lower paying positions while white employees were treated more favorably and

17

allowed promotional opportunities and training.  The court held that plaintiff's charge was

insufficient to exhaust an adverse impact discrimination claim.  The court stated:

> In the instant case, Brown claims that she exhausted her disparate-impact
> claim by asserting in her charge that African-American Ameriprise employees
> were treated less favorably than white employees.  In the Court's view, those
> allegations were not sufficient because they did not suggest that the alleged
> discrimination resulted from a *neutral* policy disproportionately affecting
> African Americans. . . .
>
> Simply put, the problem with Brown's charge is that it suggested intentional,
> not unintentional discrimination.  Although she alleged that African Americans
> were discriminated against, she failed to indicate (or even suggest) that such
> discrimination was caused by a neutral Ameriprise policy-in fact, the charge
> made no mention of any face-neutral policy at all.  While a plaintiff need not
> specifically use the phrase "disparate impact," there is a necessity for the
> EEOC charge to provide that a facially neutral policy or policies resulted in
> unintended but adverse consequences to the protected class.  Courts have
> consistently required that discrimination charges identify or describe the
> neutral employment practice which is alleged to disproportionately affect
> protected employees in order to exhaust disparate-impact claims.  Otherwise,
> every assertion of intentional discrimination could be read to imply
> unintentional discrimination, and all claims of disparate treatment would
> exhaust claims of disparate impact.  This would undermine the purpose of the
> exhaustion requirement. . . .
>
> At bottom, because the charge failed to specifically identify any neutral policy-
> the cornerstone of an EEO disparate-impact investigation, the Court concludes
> that Brown did not exhaust her disparate-impact claim.

(internal quotations and citations omitted.)

Plaintiff does not cite any case from this or any other jurisdiction contradicting the

holding in *Brown*.  The reasoning in *Brown* demonstrates that plaintiff has not adequately

exhausted his disparate impact claims.  As in *Brown*, plaintiff's EEOC charge indicates that

plaintiff was subjected to intentional discrimination by Progressive in the terms and

conditions of his employment as a result of Progressive's  "discriminatory corporate-wide

policies, practices, and treatment," but the language in plaintiff's charge does not identify or

18

suggest that a facially neutral policy of Progressive caused an unintended disparate impact on statutorily protected groups. Accordingly, as in *Brown*, the Court finds that plaintiff did not adequately exhaust his disparate impact claims and grants Progressive's motion to dismiss plaintiff's disparate impact claims for failure to exhaust. Plaintiff's EEOC charge does not identify a neutral policy that caused disparate impact on protected groups, the "cornerstone" of a disparate impact claim.

Progressive makes three additional arguments in its motion urging dismissal of all or part of plaintiff's remaining individual claims for disparate treatment under Title VII and the ADEA. First, Progressive contends that plaintiff has failed to state any plausible individual claims because plaintiff's allegations in the First Amended Complaint are purely conclusory. (Def. Mem. at 28.) The Court denies Progressive's motion to dismiss on this basis. The First Amended Complaint alleging that Progressive's discriminatory use of the VAT assessment caused him to suffer injuries in the terms and conditions of his employment contains sufficient factual allegations to support plausible individual claims of race and age discrimination against Progressive.

Second, Progressive asserts that "[c]ompensatory damages are not recoverable under the ADEA" and urges the Court to dismiss "[p]laintiff's request for these damages." (Def. Mem at 28-29.) Plaintiff contends it is premature to decide the propriety of his requests for damages. The Court agrees with plaintiff. Plaintiff has alleged a plausible individual claim against Progressive under the ADEA. The only case Progressive cites in support of its position that the Court should dismiss plaintiff's request for compensatory damages is *Hill v. Spiegel*, 708 F.2d 233, 235 (6th Cir. 1983), which did not consider a motion to dismiss.

19

(Rather, the *Hill* court found that the district court erred in allowing an award of damages for pain and suffering for an ADEA violation after a trial on the merits).  The nature of the damages plaintiff may recover in connection with his ADEA claim is more appropriately determined at a later stage in the case.

Finally, Progressive argues in two short paragraphs that "[t]o the extent Plaintiff seeks relief for any alleged unlawful acts that occurred outside the 300-day charge-filing period applicable under Title VII and the ADEA, his claims are barred for failure to exhaust administrative remedies."  (Def. Mem. at 29).  Progressive argues:

> Because Plaintiff filed his charge on June 21, 2011, any claims based on alleged unlawful acts that occurred more than 300 days earlier (*i.e.*, before August 25, 2010) are time-barred and should be dismissed.
>
> Nor may Plaintiff circumvent these time limits by relying on the continuing violation doctrine.  As the Supreme Court has made clear, the continuing violation doctrine does not apply to discrete acts such as "failure to promote, denial of transfer, [and] refusal to hire," because "[e]ach incident of discrimination . . . constitutes a separate actionable 'unlawful employment practice'" that must be the subject of a timely-filed charge.  Even in a pattern or practice case, discrete decisions "cannot be linked together to create a continuing violation."

While this Court has held that challenges to employment decisions made more than 300 days prior to the filing of the EEOC are time-barred and that discrete employment decisions cannot be linked together to create a continuing violation (*see, e.g.*, *EEOC v. Kaplan Higher Education Corp.*, 790 F. Supp.2d 919 (N.D. Ohio 2011)), Progressive does not dispute plaintiff's assertion that the 300 days may be tolled where the plaintiff demonstrates the existence of a "longstanding and demonstrable policy of discrimination."  Plaintiff asserts that "Progressive's corporate-wide policy of requiring the discriminatory VAT is such a policy." (Pltf. Opp. at 29.)  Furthermore, plaintiff also asserts that "Progressive tolled the

20

statute of limitations by concealing its conduct, ordering that no employee should know their VAT scores and preventing comparisons that would reveal their discrimination."  (Opp. at 20.)  Although Progressive disagrees with plaintiff's contentions,[7] there are insufficient facts before the Court at this time to determine whether the limitations period is tolled.  The Court denies defendants' motion to dismiss claims on the basis of the charge-filing limitations period.

**Conclusion**

For the reasons stated above, defendants' motion to dismiss is granted in part.  The Court grants defendants' motion to dismiss plaintiff's class and collective action claims and plaintiff's disparate impact claims on the basis that plaintiff failed to exhaust such claims. The Court otherwise denies defendants' motion.

IT IS SO ORDERED.

 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated:   9/25/12

---

[7]

Progressive disputes that plaintiff has adequately alleged a policy of discrimination and asserts that "courts have rejected the argument that concealment of motive alone is sufficient to extend the limitations period."  (Rep. at 30.)